The next case for argument is 12-1679 Mformation Technologies v. Research in Motion. May it please the Court, the 9-1-7 patent at issue in this case relates to the all-important ability to remotely kill or wipe a smartphone without physical possession of the handheld device, such as a BlackBerry, and the jury, by verdict, found infringement of that patent. On JMAL, as the Court notes in the papers, that was reversed, the verdict was vacated. There are two points I'd like to focus on to really get to the heart of it, and that is that JMAL should be reversed, and it should be reversed because the claim construction that was given to the jury does not require that the connection be established in the past tense before the transmitting of the contents of the mailbox. Well, that's the confusion here, right? And I don't know if you want to coach it as a claim construction issue or exactly what it is. But leaving aside all the waiver arguments that have been made, was not the jury instruction quite clear in terms of the temporal, the past tense that it requires establishing? And if so, why isn't that sufficient? Good question. Directly on, you're directly at the heart of the issues. You asked two questions, I'll answer them both. The first is I do not believe it is at all clear. I think the better reading of the jury instruction, and this is at JA 117 and 118, the much better reading of the jury instruction, is that all that has to happen for the establishing a connection sub-step is the initiation of wireless communication. That's specifically what it says, this is at JA 117 at the bottom of the page. Yeah, but as I'm sure you're very familiar, look at JA 118 where it has the sentence, the use of the phrase connection, it must be made by the server with the wireless device. The key to me on that is actually back on 117, it says there is a further limitation on this sub-step later in claim one. So to me, that's the glue that feeds that on. Do you think all along the judge was on board with the claim construction that would have meant that the establishing does not have to proceed transmitting? Is that your view of how this case went down, that the judge was agnostic about whether or not that had to be completed? I am quite certain the judge was back and forth on the issue. I mean, it's clear from the multiple claim constructions before the case. His subjective intent, I don't think, is overly important. But really, the key to that question, if we want to go to the subjective intent of the judge, is at the charge conference. And this really answers all the waiver questions and all the admission questions, and all of that gets swept away by JA 16480. This is not the J-MAL argument in the middle of the case. This is the charge conference. And at this conference, it's all on... Do you want to give me the page number again? Sure. It's 16480. And this really does have everything. At the top of the page of 16480, the REM attorney states that based on the jury instruction, they're going to say, well, the establishing step is completed when you initiate, which is the current position that we have and the position we've always had. And they were going to say, no, the establishing step is not completed with the initiation. And the judge said, I can add sentences to clarify that, because I think everybody viewed the jury instruction as not being dispositive, contrary to what the court's initial observation was here. And then he said, the connection must be established as part of the step. That was his musing. And he said, well, I don't think it's fair. And then the judge speaks for a while, and then at 1819, he goes, so let me try the language that I just mouthed for myself, which is, the connection must be established as part of this step. And he goes, sometimes what goes through my brain never makes it to paper, and you may have to object. It never made it to paper. The jury instruction that was given, which we've just talked about, and I'd like to tell you- Well, but wait a minute. But you skipped something in the narrative here. Because if you look at what the court said on lines 11 through 17, because I don't think it's fair to argue that preparation to establish a connection or starting to establish a connection completes that step when viewed in connection with the where in clause. Right. At that point, his inclination was- And he said, and I don't understand the plaintiff to be arguing that, quite frankly. Right. So isn't that- I mean, so doesn't that suggest- I mean, I don't- you're right. I mean, I don't mean to suggest that we're looking just at this injective of 10 to the court, but we're looking at what was on the record, that everybody was on the same page, and that the establishing step had to be concluded before the transmitting step. I disagree wholeheartedly, because as I just pointed at the top of the page, Rimm was clear that what's going to be argued- I mean, we can go through every page of the back and forth, and if the court thinks that the judge was always of one mind, I suggest a review back of the record in our briefing of that. The judge was back and forth on this issue, and stated he was back and forth on this issue. But what's important for present purposes is that at this moment, at the end of the charge conference, Rimm's attorney said what they're going to argue from this jury charge is that initiating is sufficient. So, I don't agree with any statement that everyone was in agreement. I think Rimm knew that people weren't in agreement, and this is concrete black and white that said so. He says, oh no, if we leave the jury instructions the way they are, they're going to argue initiating is sufficient, which we were. And then the judge said, well, I don't know about that. Maybe I can add this really strong language. And then he said, well, let me think about it, and then he didn't add it. But since the subjective intent of the judge doesn't matter for purposes of H.P. Mustick, and the court has said that it believes that this jury instruction is clear, I absolutely disagree. It says, in order to complete the establishing of connection step, all you need is initiating. And the other side argued, for example, in the initial claim construction that no, you needed to fully establish. And the court said, no, all you need to do is initiate. Mr. Norris, the case comes down, really, it seems to me, to two things, leaving aside all of the discussion about waiver and admissions. We first have to determine what the actual jury instruction was, and then when we make that determination, we have to decide whether that represented a correct construction of the claim, correct? Right? Not so much, because Rimm has not challenged it. Our position is, and I'd like to walk through it just a little bit. No, but let me, I mean, we have the jury instruction, and there's a dispute here, it appears, about what was meant in the jury instruction, correct? I totally agree with that. Now, if we conclude that the instruction meant that the establishing step, or the connection, had to be established before the transmission, then does the question not become, was that claim construction correct, or incorrect? Yes, it does, from the information perspective. Now, if that is the correct construction of the instruction, if you will, why do you say that's error? Why do you say it's wrong that the connection step must, it doesn't have to proceed, that all you need is initiation? Okay, so there's the text of the claim, establishing is an active term, the where-in clause is at the very bottom of the claim, and it uses established. They could have used established at the front of the claim, and this goes to both questions, the proper construction of the jury instruction, and the proper claim construction. The claim uses establish or establishing, and we see that in the specification, and, you know, I mean, it seems to me, you look at, I looked at the dictionary definition of establishing, or establish, it says, to make secure or firm, okay? Now, don't we use the normal dictionary definition of the word establish when we're trying to determine what establishing as used in the claims and the specification means? Yes, and I agree, and that's very supportive of our position. At the bottom of the claim, it says there's three steps that have to happen, establishing a connection, transmitting, and then accepting. The construction is that, does establishing have to happen before transmit, okay? Established is a where-in clause that was added during prosecution at the bottom. There's no, if the court had meant, if the patent had been meant to be written, that it had, the connection had to be established before transmitting commenced, it would have just said established in the establishing a connection. But it doesn't make sense, it says, it uses the word variation on establish, it uses the I and G form, but it seems that establish means put in place firmly more than initiate, which is, the dictionary definition is to cause to begin. Initiate wasn't challenged. So, that's pretty challenging now. They admit establishing connection is initiated. No one's debating that. The question is whether you transport, the question is whether that's enough to meet the establishing. For the temporal, yeah, for the temporal sequence, but there's a broader point, which is the idea of a temporal requirement's wrong altogether, because- That's what I was going to ask you, is it your view that, I mean, that that's wrong or is it your view that it doesn't matter because under our case law, there's no requirement for the steps to be taken? There's no reason under this situation why you should have this temporal requirement. Well, if you look at the other limitations, though, it's quite clear there's some temporal requirement in this claim, right, because you can't do certain things without having done the other. When you talk about transmitting the contents of the mailbox, and then you say accepting the contents of the mailbox, one has to happen before the other, right? Well, this is this concept of logic, right? This is this concept that logically that's what has to happen, it has to be the sequence. So I would say, first of all, the fact that there's an argument that technologically there's a logic doesn't make that a legal requirement. No, I'm not talking about technological logic, I'm just talking about regular words, that you transmit something to the mailbox and then you accept the contents of the mailbox. I mean, this stuff, one has to happen before the other or it makes no sense. Right, and no sense is logic, and that is not true on the technology here. We worked this through in our brief, making the point that you can initiate a communication and initiate the transmit, which is how their system works. That's how UDP works, that's how their system works, it is possible to initiate communication and transmit. Yeah, but the problem with you is the claim doesn't say by initiating the connection, it says by establishing a connection. Isn't that precisely the rub here, that there's a difference, that establishing means one thing and initiating means another thing. That's why it's so easy for the court to rule for information on this, because initiating is agreed is what establishing a connection means. You don't have to worry about that. Everyone agrees that establishing a connection means initiating the connection, initiating the communication. You don't have to worry about that. So really it goes back, I would like to just put some focus. I'm so unsure about your answer to Judge Post. You know what paragraph we're talking about, establish a connection, transmitting the content, accepting. If you take those three phrases as A, B, and C, I understand your position is that A doesn't have to occur in any temporal time frame, but B and C have to occur in order, don't they? Maybe. I mean, it just doesn't matter to this case. Well, it matters to me. It matters to this case. B and C, by any plain reading, if B is transmitting the content in the mailbox and C is accepting the content, then C has to occur after B. You can't accept something before it's transmitted. Since those aren't the claim requirements, I can't say I've focused as much on that, since those haven't been initiated. I think the point of this, or at least the point for me is, this claim has at least some temporal limitations in it as regards to B and C. Putting aside your arguments about A, which is, I know, what the case turns on, but it's not that the claim doesn't have any temporal limitations, it's your argument that A doesn't necessarily have to precede or follow B and C. Let me be really clear. The temporal locations are technological and logical, not legal. In other words, if you're saying you can't do A before B... We have to read claims with their plain language. We can't read a claim that says step C could occur before step B, because that would be contrary to any notion of plain language reading. But that's the risk of having a layperson read this, when the technologists are saying you can initiate a communication before transmitting. But you can't accept the content. I don't need a technology degree to tell me that I can't accept the content of a mailbox before it's sent. Okay, so maybe those two sub-steps have some sequence, but that's... I was focusing on the claim requirements at issue in the JMAL. And I think, I just have to go back to the core point that we started with. I do not believe that this jury instruction clearly says to any lay juror that there's a requirement. It says initiating's enough for the sub-step to be met, and then it says there is a further limitation on the sub-step later in Claim 1, and then it talks about the important question of threshold conditions. Because that's the whole point of the wear-in clause. Well, we're into your rebuttal. We'll restore a couple minutes of your rebuttal, and let's hear from the other side. Thank you. Thank you. Mr. Philbin. Thank you, Your Honor. May it please the Court, Patrick Philbin for the BlackBerry Parties. Your Honors, I'd like to try to cover four points today. First, there was no change in the claim construction. Second, the claim construction was correct as to the ordering of steps. Third, there wasn't substantial evidence to support the verdict, and at the end, I'd like to touch briefly on remedy, because obviously, I believe I can show the Court that the judgment should be affirmed, but if the Court finds any reversible error, the one result that should not occur here is reinstating the jury verdict, and a remand would be necessary. Can I ask you one sort of housekeeping question beforehand? Am I wrong or right that the parties had agreed early on or something that the where-in clause at the very conclusion of the claim went to that establishing limitation? That was in the Court's first claim construction order about two years before trial. It has not been challenged. So that is set in stone for here. And so, Your Honors, I'd like to cut directly to the jury instruction, because I think that's the best way to get to the heart of... And so, your position is the jury instruction was clear. Absolutely, Your Honor. It was clear, and it was clear for the reasons that you were pointing out, Your Honor, because there is a phrase there, and I was looking at JA 16570, which is the transcript of where it's actually read to the jury, not just the paper copy of the instruction, and the Court points out, he's told them that the where-in connection is established based on a threshold condition as a further limitation on the established connection subset, then he goes on to say, quote, the use of the phrase connection is established means that a connection must not only be initiated, but must be made by the server with the wireless device. And that shows him... And there's all this back and forth about initiating... Yeah, unfortunately, it could have been clearer still, right? Well, Your Honor... Instead of saying that it must be completed, it must be established, right, it could have been a little clearer. I think made is very clear. I mean, there are, I guess, some inherent limitations on language, but how clear can clear get? And the one point that I'd also like to emphasize, Your Honor, Mr. Reines keeps emphasizing this point that the Court said that later there's this where-in clause, and that it's separated, that if that means, oh, the jury could have thought that the stuff in the where-in clause doesn't really have to be part of or be done as part of the establishing connection subset. And I think what really shows that that doesn't work, I think it's playing from this language, where the judge is giving an instruction on that subset and says, this other clause is a limitation on that subset. That's clear, it has to be done as part of that subset. It's further confirmed by the verdict form at JA-16-741, because if you look at the verdict form, the judge broke out each step for the jurors, and in the establishing connection subset, it's included there, the language, connection established, past tense, based on a threshold condition. The only way that the jury could answer yes to that box on the verdict form for establishing connection subset is to say yes, this language of connection is established based on a threshold condition was satisfied in that step. And Your Honor, that's why it's based on these reasons that the district court, when it looked at this, and remember, a second set of eyes, a second district judge on the motion for new trial already looked over the record and said, no, there was no change. What was given to the jury in this final instruction is exactly what was used at J-Mall. And one point, Your Honor, on the colloquy during the charge conference, I just want to point out, I think the judge was making it very clear there. He said, I don't think it's fair to argue that preparation to establish a connection or starting to establish a connection completes that step when viewed in light of the Warrant Clause, and I don't want to leave the jury with that impression. Mr. Reines said, well, that never made it into the jury instruction. I don't believe that's correct, Your Honor. This colloquy during the charge conference was about a draft set of the jury instructions. The final jury instructions have the sentence saying, initiating is not enough, it has to be made. That's what was added to respond to this. So, assuming we accept that, we're still left with a claim construction argument, leaving aside all the waiver stuff. That's correct, Your Honor. So let me move to that. Yeah. The claim construction that the district court applied was correct because the claim, the prosecution history all support an ordering of steps. But generally our cases say that there's no temporal requirement associated with all of these steps in a method claim, right? Certainly that there's no presumption, Your Honor, but that where there are indications in the intrinsic evidence of an ordering of steps by logic, by grammar, and by the prosecution history specification, that these will impose an ordering of steps. The function media versus Google case is a good example. We also cite others, combined systems versus defense technology. There are multiple ones. And one of the key points is logic. When there's a step that says that you establish a connection, and another step that then has to use that connection, which is the transmitting sub-step, logic implies that you have to do one before the other. And it's the same, as Judge Hughes was pointing out, when you have transmitting the content to the mailbox and accepting the content. Well, see, that I see. But I think, I mean, if you look at the technology, obviously the fact that you do it proves the point, right? That establishing does not have to precede or be completed before transmitting. So as a technological matter, that's not necessary, whereas the mailbox might be something different. Well, Your Honor, no, I don't think that we do it, because the point is we don't do it. We don't establish a connection before transmitting. We just transmit. So you can just transmit. But what the patent says, and so this is sort of the second point, Your Honor, is if you say that you can just transmit, and that's it, you've read the establishing step. No, I understand that. Yeah, I understand. I mean, it serves no function. And the key is that that transmitting has to take place over the connection. So there has to be a connection created to then to be used for the transmitting. And if you, their approach is to say, well, look, all you have to do is initiate. You just put a header on the message. As soon as you put a header on the message, before anything moves outside the server, not a single electron or byte has moved outside the server, you've got a connection. Well, then you've eliminated the establishing connection subset from doing any separate work. Because every time you're just going to transmit something, you put a header on it, and you decide which path it's going to go out of. So you've eliminated establishing connection. Why couldn't this claim, I think the B and C parts of the claim that I'm calling them clearly are temporal. That the transmitting has to come first, and the accepting the contents of the mailbox has to come second. But why couldn't the connection be established afterwards? I mean, a lot of these devices do work as they send out a packet, somebody receives it, and then the connection is established, they send a message back and say, well, you got it. That's the connection. Here's why, Your Honor. There are two reasons. One is critically dependent on the wear-in clause. And the wear-in clause has to be understood in light of the prosecution history. When the patent application was first made, there wasn't a wear-in clause in this language about based on a threshold condition in the independent claims. They were all disallowed. The only claims that were allowed were dependent claims that had these sub-steps of the delivering step, the sub-steps of establishing, transmitting, accepting. And it had the wear-in clause, and it had that language of based on a threshold condition. And that was critical because it said that the trigger for what's going to have this And that was critical because prior art taught a method of having a handheld device access a mailbox of commands periodically based on the lapse of time. So it was essential for this patent to be valid, that it have some limiting mechanism, a trigger event that has a temporal aspect that determines when these other things are going to happen that is based on something other than the lapse of time. And the way the inventors built that in was to create these sub-steps for the delivering step and have the first one be establishing a connection and then link that into the wear-in clause. And as Mr. Reines pointed out, yes, it was added in later because they had to add it in to make the patent valid. That's why it's a few lines down. And it says where in the connection is established based on a threshold condition. That becomes the critical trigger or gateway for determining when everything else happens. If you decouple transmitting, if you allow transmitting to go ahead without having satisfied the conditions of the wear-in clause, you've obliterated the function of the wear-in clause. Now you're transmitting without any connection to that threshold condition. And that threshold condition is supposed to be the key regulator, the trigger that determines whether these other things are happening. So the fact that it is simply possible for some types of technology to transmit without establishing connection, yes, that can happen. But what that means is that that technology doesn't read on this patent or this patent doesn't read on that technology. Because this patent says, and they had to put it in that way, establish a connection first based on a threshold condition. When you do that based on a threshold condition is what must precede the other steps following. The other point, Your Honor, is the specification. Because there's only a single embodiment in the specification that describes establishing a connection sub-step. And it very explicitly describes it as requiring an established connection first. Yeah, but that's a little weak. It's not a clear disavowal. It's just one example, right? So that doesn't get you very far. Your Honor, by itself, if that was all I had to hang my hat on, perhaps. But it is part of cumulative evidence coming from the logic, coming from the fact that if you say that you can transmit before having a connection, you're kind of eliminating the established connection sub-step. You're making it superfluous. There's a prosecution history in the wear-in clause. And there's the sole embodiment in the specification. And this Court's cases, like Respironics v. Invicare, suggest that when there is a sole embodiment and there are other indications of a limitation, that is evidence. That is important evidence of a limitation on the claim. Can I just ask you, this is sort of as an aside, there's a statement in your brief which reads to me like a statement of the law, and it just puzzles me a little. It's on page 21. I know you're arguing there was no change in the claim construction, but here you're arguing in the alternative. Even if there were a change, the District Court rightly held that any error was harmless because information could not identify any additional evidence that would have presented had it known about the new construction earlier. Is that really the way the law works? If the judge clearly changes the claim construction after the jury trial, then the burden is placed on the patentee or on the other party to establish that it would have presented new evidence? Yes, because you didn't cite any cases for this, and it just struck me as a little... I believe, as with any error, if they're going to assign error, harmless error review would have to come into it, and any error can be deemed harmless if they can't show something would have hinged on it. So if there was a change to the constituted error, the District Court rightly examined everything that they said. I mean, they went into the District Court on the motion for new trial and said, this was unfair. They changed the construction. We would have done this. And he probed into that, and he asked them an argument, and he held that they conceded an argument that they didn't actually have any other evidence that they would have presented. And that's a holding that, for reasons we go into in the brief, they haven't challenged. So that is something that the District Court's holding on that would have to stand. So, Your Honor, I think, as I've gone through the claim, the specification, and the prosecution history, all support the ordering of the steps requirement. I'd like to turn to the fact that there was no substantial evidence to support the verdict. And you have to think of this, divide this into Wi-Fi and cellular operation. On Wi-Fi operation, there's no infringement because the Blackberry handheld device requests the connection to the server. The patent has a limitation saying without a request. Here, the operation of the devices is undisputed. It's all an argument about how you characterize the fact. And the handheld device clearly requests a TCP connection with the server. That connection is maintained. It stays up. And all further communication goes over it. So anything that's transmitted for the transmitting sub-step is done on that connection that was established at the request of the handheld device. It doesn't practice the steps of the patent. On cellular operation, Your Honor, their entire argument is it's something that takes place inside the server. Just putting a header on the message, wrapping that GME header on the message, and selecting the port it's going to go out of, selecting the cellular port. Nothing moves beyond the server. Not a single electron. They say that's a connection. It just doesn't meet the plain language. It's most basic, Your Honor. The verb to connect means to join together. And the claim here says establish a connection between the wireless device and the server. A connection has to be then an event or an action that extends across space that joins together those two spaces. It can't be something that occurs only inside the server. And here they didn't point to anything that moves outside the server and actually goes to the handheld device. The incongruence of their position, I think, was best shown when their expert was asked to trial, if you had a handheld that was smashed in a million pieces, it was obliterated, can you establish a connection with it? And he said yes, because in their view, all you have to do to establish a connection is have a server. You don't even need to have a handheld device. And they would say you can establish a connection. It just doesn't meet the plain English of the claim. So Your Honor, I think it's clear that there wasn't substantial evidence that the products practiced the patent, both for Wi-Fi operation and for cellular operation. And the last point I'd like to make, Your Honor, obviously, I think the judgment should be affirmed. I think it's very clear the judgment should be affirmed. There wasn't a change in the claim construction, and the claim construction as given was correct. There wasn't evidence to show infringement. But in any event, Your Honor, no matter what happens, if the court were to find some error, there can't be reinstatement of the jury verdict, because there were additional issues below that the district court didn't resolve. There were additional grounds in advance for JAMAL that weren't addressed. There was an inconsistency in the jury verdict on invalidity that the district court also did not address. It reserved both of those questions for us to be able, for BlackBerry to be able to address them on any remand if there were a reversal, and there was also a conditional motion for new trial granted. So the case would also have to go back for that purpose. Unless there are further questions, Your Honor, we'll rest on our breeze. Thank you. Thank you. Thank you. Two points. One is focusing on what's the source of the legal requirement for a temporal sequence between sub-step one and two. And we all agree, it sounds like, that the general rule is that there is no such requirement. And as the colloquy there just made clear, the specification doesn't invest any importance in that sequence whatsoever. There's one embodiment that's actually ambiguous, and that's in our papers. We don't need that. So the patent isn't the source of it. So then it's the logic of the technology. What I would ask the court to do is rethink about this and reframe it this way. Whether you could establish the connection simultaneous or interleaved with transmitting the contents is a technological question that was presented by expert testimony for the jury to consider. That's really the way to think about this thing. For judges to say there's a legal requirement because we think it's logical that A happens before B when that's not so, and there's examples in the record that make it not so, is not the appropriate role. Yeah, but the question isn't really whether the technology would allow it. It's a question of what the claims require, right? Right. And the general rule is that there's no temporal requirement, and the specification doesn't invest it with any significance that the law in the different cases that we have in Baldwin is the leading case on this. What about Mr. Philbin's argument that if we read it your way, it essentially writes out that piece of the limitation, which seems to me to be correct? It is not correct for two reasons. First is that essentially is too broad because it would cover push technology. The patent is clear that all protocols are covered. It exactly contemplates the situation where you're pushing things over the Internet. That's how the Internet works is you have the headers with the packets. I mean, it's no surprise that it covers that. Now, in terms of vitiating the claim requirement, the establishing of connection is significant not because of this temporal stuff. That's what's so frustrating. It's the threshold condition. It's this point that it can't be an on-call thing. It has to be the result of a threshold condition. And so that is why the establishing of connection has to happen. And there's a not connection list. I mean, this was all presented to the jury. We established that their own manuals, it's all in our papers. Their manuals admit their connection. There is a connection established in their system. They can't deny that. It is over the Internet. So it's done with establishing, initiating communication in parallel with the payload going over the line. But that's exactly contemplated. The second point that I wanted to get to is I would just ask in terms of the jury instruction. We have the written one and I pointed to that and I think I was corrected that it's better to look at the transcript because it doesn't have the pretty headings and all the organization that makes this maybe what made it so obvious to the court that this is what it says. But it says, to a normal human being, if you say the establishing of connection step is met when you initiate the communication. That's the time when it's complete. And then you say, and there's a further limitation and that is in the where in clause. And then it talks at length about the threshold condition, which is what matters. And then at the bottom of that it says, and the connection is established after you actually do whatever you do, it's made. It seems to me under that condition, to say that the jury would know that initiating a wireless communication wasn't enough. Why would they reject what the construction is being given to them? It makes no sense to me. So at a minimum, if it's ambiguous, which I think the court alluded to, at a minimum it's ambiguous. I just do not, given, it would completely eliminate that claim construction and the word establishing a connection to say that it has to be complete. Why would any of that language be in there? It has no purpose. It's complete superfluous. So it would be eliminated. The final point is that there was also expert testimony that the port, this is the port, that by selecting the port and selecting the destination that you've established a connection. And I think there we should again be deferring to the expert testimony. That's even under the jury instruction as one of the alternative readings. All right. Thank you very much.